## Keeler's Estate.

Argued December 2, 1938.  Before KEPHART, C. J.,
SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Samuel Lichtenfeld,* for appellant.

*John Russell, Jr.,* with him *I. N. Earl Wynn,* and *Morgan, Lewis & Bockius,* for appellee.

OPINION BY MR. JUSTICE STERN, January 9, 1939:

By the will of James Keeler, who died in 1904, he divided his residuary estate into several shares, and as to one of them provided as follows: "I give and bequeath to the Fidelity-Trust and Safe Deposit Company of the City of Philadelphia to be held in trust as trustee one of said shares for the use of my grand-daughter Lizzie Bartholomew, a daughter of my late daughter Annie Bartholomew now deceased . . . Said trust is to be held on the following terms and conditions. The said company trustee to securely invest the said principal and with the interest arising therefrom to be paid semi-annually if it can be so arranged. If not then the same to be paid annually—for the exclusive use of my said grand-daughter. This trust to continue so long as the said Lizzie Bartholomew and her father Frank Bartholomew shall be living—however so soon as the said Frank Bartholomew shall be deceased and if my said grand-daughter then shall be living and twenty-one years of age then the said trust shall terminate and the principal sum of money shall be paid over to my said grand-daughter to whom the same is bequeathed. Should my said grand-daughter not survive her said father then this trust to terminate and the principal sum of money and all accrued interest thereon not paid or used for the use

of my said grand-daughter either by said Trustee or my said grand-daughter shall revert to my other children or grand-children—where its or their parent is deceased. *During the time the said money shall be on interest for the use of my said grand-daughter Lizzie Bartholomew said interest or such portion thereof shall be paid to her or used for her support or education and maintenance so as to make her comfortable in life, said amount so to be used to be determined by said Trustee.* . . . If the said Frank Bartholomew shall be deceased before my grand-daughter shall arrive at the age of twenty-one years then so soon as she shall arrive at said age said trust to end and she shall then receive the principal sum of money and all interest thereon which shall not be expended as aforesaid mentioned."

Lizzie Bartholomew became twenty-one years of age a few months after her grandfather's death, but her father, Frank Bartholomew, did not die until 1936, so that the trust continued until that time.

During the first few years of the trust the entire income was paid to Lizzie Bartholomew. But in 1908 she assigned to Thomas Parker all her right, title and interest in the trust estate to secure the payment of a loan of $4,000, and directed the trustee to pay to him the annual sum of $240 interest and in addition $54.40 for the premium on a policy of insurance on her life, these payments to be charged to her income account, the $4,000 to be paid to Parker out of the principal when the fund should be distributed. In 1909, by instrument under seal, she assigned to Frank B. Ellis all her right, title and interest in the trust estate absolutely, subject only to the payment of the Parker loan; subsequently Ellis assigned his interest to Ross N. Hood, and he in turn to Catharine L. Hood. Accordingly, beginning in 1908, the trustee paid to Parker out of the income the annual sums specified in the assignment to him, and, beginning in 1910, the entire remainder of the income first to Ellis, subsequently to Ross N. Hood, and then to Catharine L.

Hood. The trustee filed its account in 1936, at which time Lizzie Bartholomew, who by marriage had become Lizzie B. Diemer, set up the remarkable claim that, the trust of which she was the beneficiary being a spendthrift trust, the income was inalienable and her assignments to Parker and Ellis invalid, and that the trustee should therefore be ordered to pay to her all the sums it had disbursed to her assignees during the preceding twenty-eight years. Upon the recommendation of the auditor to whom her exceptions were referred they were dismissed by the Orphans' Court and the account was confirmed absolutely.

As far as the *corpus* of the trust fund is concerned there is no provision in the will restricting its alienability. At the termination of the trust the principal was to be paid to Lizzie Bartholomew unconditionally. Appellant's attack is confined to the *income*. As to that, the will is not wholly free from ambiguity. It first directs a semiannual or annual payment of the interest to the beneficiary. A later clause provides that not all the interest need be paid to her, but, in the discretion of the trustee, only such portion as, devoted to her support or education and maintenance, would make her comfortable in life. Apparently there is also a discretion allowed to the trustee whether such portion shall be "paid" to her or "used" for the purpose indicated. Since the trust was to end and the principal to be paid to her upon attaining the age of twenty-one if her father were then dead, but not until the death of her father no matter how old she might then be, it would seem clear that the testator was not seeking to protect her interest in the trust against creditors after she came of age but rather against demands and importunities of her father. The latter had remarried, and Lizzie Bartholomew did not live with him and her stepmother but with her grandfather, which probably accounts for the latter's attitude towards his son-in-law.

Even if we resolve all ambiguities so as to interpret the intent of the testator most favorably to the contentions of appellant, the provisions of the will cannot be held to constitute, in any technical or exact sense, a spendthrift trust. Such a trust exists where there is an express provision forbidding anticipatory alienations and attachments by creditors. Here there are no such restrictions. The present trust is a so-called "trust for support," and, although sometimes loosely referred to as a spendthrift trust, differs from it in essential features which must not be overlooked if confusion as to its legal attributes and qualities is to be avoided. In a trust for support the limitation of the power of alienation arises only by implication from the nature of the beneficiary's interest and the indicated purpose of the trust.[1] Examples of such trusts, held to debar attachments by creditors, are to be found in *Keyser v. Mitchell*, 67 Pa. 473; *Winthrop Company v. Clinton*, 196 Pa. 472; *Smith v. Savidge*, 4 Pennypacker 320; *Benefactor B. & L. Association v. Latta*, 106 Pa. Superior Ct. 156. The purpose of this type of trust being to furnish to the beneficiary the means necessary for his personal subsistence, education and physical comfort, that object might be frustrated if the income were to be dissipated among creditors or anticipated by the beneficiary. If, therefore, an assignment of the beneficiary's interest would be incompatible with the purpose of the trust by diverting the income from the use stipulated by the testator, the court will, in order to enforce his dispositive intent, prevent such diversion even though there be in the trust instrument no express restriction on alienation. While, therefore, in a spendthrift trust the interdiction against

---

[1] The distinction between a "spendthrift trust," a "trust for support," and a "discretionary trust" is explained in Restatement, Trusts, sections 154, 155, and in Griswold on "Spendthrift Trusts," sections 421, 422, 430, 431. See also *Brahmey v. Rollins*, 87 N. H. 290, 300, 179 Atl. 186, 193.

alienation, voluntary or involuntary, is express and absolute, and will be enforced accordingly, in the case of a trust for support the law implies and enforces restrictions only to the extent necessary to consummate the purpose of the testator.

The distinction thus pointed out is of decisive significance in the determination of the present controversy. The use of the income from the trust fund was to be for the education, maintenance, support and comfort of Mrs. Diemer *during the life of the trust,* which happened to extend from the time when she was twenty-two until she was fifty-two years of age. During that period a court of equity, in order to carry out the wishes of the testator, undoubtedly, had its aid been invoked, would have prevented attachments or anticipatory assignments interfering with the use of the income for the purpose which he expressed. Instead, however, of seeking such enforcement during the time when it was possible and fruitful to obtain it, Mrs. Diemer now asks the court, after the thirty years duration of the trust has terminated, to award her a present sum of money by way of replacement of the income which accrued during those years, although it can no longer be applied, as provided by the testator, for her education, maintenance and support during that period. Except as impliedly restricted to the extent necessary to consummate the testator's purpose, the income was legally assignable by her,— thus differing from the case of a regular spendthrift trust,—and since the testator's object of educating and supporting his granddaughter during the existence of the trust period cannot, of course, be now carried out, the foundation upon which appellant's claim rests fails utterly to support it.[2]

----

[2] An example of a case where a clause against anticipation in a trust might have been enforced before its violation, but redress was refused after the violation had in fact occurred, is *King's Estate,* 147 Pa. 410.

There is another reason why appellant's position is untenable. Even in a spendthrift trust the beneficiary has full ownership and control of the installments of income *after* they respectively accrue, and, therefore, after such accrual, the beneficiary may give directions to the trustee to pay such installments to her nominee or assignee.[3] When the beneficiary makes an assignment of *future* income and directs the trustee to pay such income to the assignee, such an assignment, in the case of spendthrift trusts, is invalid in the sense that it can be revoked at any time by the beneficiary, but, unless and until so repudiated, it constitutes a valid authority to the trustee to make payments of the successively accruing installments of income to the assignee. The direction to the trustee to pay to the assignee is enforceable only as to each installment after it accrues, and then only if the direction has not previously been rescinded.

In Restatement, Trusts, section 152(i), these principles are thus expressed: "If income has been received by the trustee which is payable to the beneficiary and it is paid by the trustee to a third person on the order of the beneficiary, the trustee is under no liability to the beneficiary for making such payment, although by the terms of the trust the interest of the beneficiary is inalienable, . . . The trustee is under no liability for making such payment even though the order of the beneficiary was given by him to the trustee before the income had accrued in the hands of the trustee. The trustee is under no liability for making such payment even though it was in the form of an assignment by the beneficiary of his right to income thereafter accruing. Such an assignment has the effect of a revocable order to the trustee to

---

[3] This assumes that there is no provision in the trust instrument that the income shall be paid to the beneficiary personally or on his personal receipt. Nothing herein stated is to be understood as applying to such a case, as to which see *Hays's Estate,* 201 Pa. 391; *Estate of Martin Nixon,* 101 Pa. Superior Ct. 152, affirmed 306 Pa. 261.

pay the income to the assignee. Since the interest of the beneficiary is not assignable by him, however, even though value was given for the assignment, the beneficiary can revoke the authority of the trustee to make payment to the assignee at any time before the trustee has made such payment. The assignee can keep any payment made to him prior to the revocation by the beneficiary of the authority of the trustee. . . ."

In Griswold on "Spendthrift Trusts," section 306, it is said: "When the beneficiary [of a spendthrift trust] assigns his right to receive income under the trust and the trustee makes payments of income to the assignee as the payments fall due, the beneficiary sometimes seeks to assert that it was a breach of trust for the trustee to comply with his directions, that the payments should have been made to the beneficiary instead of to the assignee, and that the trustee should be compelled to pay again to the beneficiary the amounts which have already been paid at the beneficiary's order. All the cases, however, agree that the trustee may validly make such payments of income at the request of the beneficiary, and that he may take credit in his accounts for payments so made. Of course, such payments must be made before the assignment is revoked by the beneficiary. The assignment is necessarily simply a revocable power of attorney. This follows from the inalienability of the interest, for an irrevocable assignment would be equivalent to a transfer of the beneficiary's interest." See also *In re Van Heusen's Estate,* 262 N. Y. Supp. 149; *In re Lynch's Estate,* 272 N. Y. Supp. 79. In the last named case it was said (p. 84) : "As to any attempted transfer of future income, a purported assignment thereof . . . amounts merely to a direction for payment of the several future sums as they accrue. Any such direction, however, is 'subject to revocation by the beneficiary at any time in respect to payments not made prior to such revocation.' Any payments of future income actually made by the trustee after their accrual, pursuant to such an

unrevoked order are, in essence, paid to the authorized agent of the beneficiary and furnish a pro tanto discharge of the obligations of the trustee."

Had Mrs. Diemer at any time during the existence of the trust revoked the assignments she had executed, or notified the trustee to cease paying to her assignees further installments of income, the trustee would have been subject to surcharge for any payments so made thereafter. Having, however, made these assignments, with authority and direction to the trustee to pay the assignees in accordance therewith, and never having rescinded such direction, she cannot now, at the end of nearly thirty years, compel the trustee to restore to her the payments made at her own request. Her direction to the trustee to pay to the assignees attached itself, not by way of anticipation, but separately to each installment of income after it had accrued, and judicial decisions are apparently unanimous in holding that the trustee was justified in so treating it.

The order of the court below confirming the trustee's account and dismissing the exceptions filed by appellant is affirmed; costs to be paid by appellant.