100 So.2d 181 (1958)
Mary Beeman PHILP, Appellant,
v.
Mary Elgin TRAINOR, and G. Ben Fishback, as trustee, Appellees.
No. 264.
District Court of Appeal of Florida. Second District.
February 7, 1958.
Rehearing Denied February 24, 1958.
Smith & Tipton, Walter E. Smith, Orlando, for appellant.
Maguire, Voorhis & Wells, Raymer F. Maguire, Orlando, for appellee, Mary Elgin Trainor.
Fishback, Williams, Davis & Dominick, Orlando, for appellee, G. Ben Fishback.
ALLEN, Judge.
This is an appeal from a final decree entered in an action by Mary Beeman Philp against Mary Elgin Beeman (now Mary Elgin Trainor) and G. Ben Fishback, as trustee, to have a certain assignment of trust funds by plaintiff to defendant Beeman set aside, which decree upheld the assignment and dismissed the suit.
The appellant assigns the following points of law as involved on the appeal:
1. Whether or not Mary Beeman Philp had the right to assign the income of the Harry L. Beeman trust.
2. Whether or not plaintiff's motion to strike the pleading of estoppel in defendant's answer should have been granted.
3. Whether or not defendant Mary Elgin Trainor proved by competent substantial evidence that Mary Beeman Philp was estopped from questioning the validity of the assignment dated April 1, 1952, in which Mary Beeman Philp as beneficiary of the Harry L. Beeman Trust assigned one-half of the trust income of said trust to Mary Elgin Trainor, not to exceed the sum of $9,000.00 in any one year if plaintiff's proffered exhibit "G" was admissible in evidence.
*182 4. Whether or not Mary Elgin Trainor was estopped from claiming the trust income of the Harry L. Beeman Trust assigned to her by Mary Beeman Philp as beneficiary of said trust under assignment of December 20, 1943, and the assignment of April 1, 1952.
Questions 2, 3, and 4 are important in this appeal only if the lower court was in error in holding that the trust income involved in this appeal was assignable. We are of the opinion that the lower court should be affirmed so we will not further allude to points 2, 3, and 4 hereinabove set forth.
This Court is of the opinion that the only parts of the Beeman trust that may be applicable in consideration of this case are as follows:
"Whereas, The said Trustor is the owner and holder of Five Thousand Eight Hundred and Ninety-nine (5899) shares of the Capital Stock of the Beeman Investment Company, a Florida Corporation, and is desirous to make a provision and settlement for the benefit of Mary Beeman, a minor of Orange County, Florida, now aged six years, by a conveyance in Trust of the property hereinafter described, subject, however, to the restrictions, trusts and powers herein contained:
"Whereas, No consideration was given by said Trustee for the designation of it as Trustee but that it has been so designated so that it may receive, collect and disburse all payments made to it as Such Trustee and to manage and administer the trusts, uses and benefits hereinafter specified. The real consideration of this instrument being the love and affection Trustor herein bears for Mary Beeman, minor, grand-daughter and only child of Edwin P. Beeman, deceased, his son.
* * * * * *
"* * * to collect, receive and disburse the proceeds therefrom for the term of this Trust, and to apply the same in its full and uncontrolled discretion for the use and benefit of the said Mary Beeman, minor, for and during her natural life and to the heirs of her body at her death, if such there be. Should she die without issue during the life of her Mother, Mary Elgin Beeman, shall then become the beneficiary of this Trust Estate on the same terms for her life and to the heirs of her body at her death.
"Should the said Mary Elgin Beeman die without such issue, or should she predecease Mary Beeman, minor, who should then die without issue then this estate shall descend to the lawful heirs of Trustor, herein according to Florida Laws of Descent and Distribution.
* * * * * *
"For the term that said Mary Beeman shall remain under legal age the Trustee shall pay over to her legal guardian, or to Trustor herein, the net income received as it may determine, and the receipt of either shall be sufficient acquittance and release of said Trustee for sums so paid. Authority is hereby given said Trustee to regulate the expenses of the beneficiary hereunder so as to provide for proper maintenance of the property and the corpus of this Trust; pay the expense, legal and otherwise, incident to its protection and administration, and to set up, if necessary, in its sound discretion, a reserve fund for the education and any unusual need that might arise. However, the Trustee shall at all times pay over monthly, if convenient, if not all the net income, a sum sufficient for the needs, comfort and maintenance of the beneficiary in the style she has been accustomed, or according to the means in hand."
The General Master, in his report, said in part as follows:
"The language of the Trust Indenture clearly discloses the intention of the Trustor. There is no occasion to *183 resort to parole evidence to ascertain what his intention was. It is clear from the language above quoted from the Trust Indenture that the interest of the beneficiary, Mary Beeman, in the income of the trust during her life time is not limited to her needs for support. The mere expression of the motive of the Trustor to create a trust for her support would not prevent the beneficiary from assigning her interest or her creditors from reaching it. Where the whole of the income is to be paid to the beneficiary or applied to his use, his interest is alienable even though the settlor provides that the trust is created for the support of the beneficiary, unless the settlor manifested an intention that the interest of the beneficiary should not be alienable. The Trust Indenture clearly discloses that it was trustor's intention that the entire net income of the trust should be applied or paid for the use and benefit of Mary Beeman for and during her natural life, and to the heirs of her body at her death, if such there be. The Trustee is directed to apply the whole of the net income for the use of Mary Beeman and not just so much thereof as is necessary for the support of the beneficiary. * * * It is clear from this language that for the term that Mary Beeman shall remain under legal age the Trustee is required to pay to her legal guardian, or to the Trustor, the entire net income of the Trust, and that the receipt of either shall be a sufficient acquittance and release of the Trustee for sums so paid. The discretion vested in the Trustee relates to which of the two persons he shall pay the income, the Trustor or the legal guardian. He has no discretion as to the amount but must pay the entire net income. The second sentence in the paragraph giving the Trustee authority to regulate the expenses of the beneficiary is strictly limited to the accomplishment of stated objectives. These objectives are: `to provide for proper maintenance of the property and the corpus of this Trust, pay the expenses, legal and otherwise, incident to its protection and administration, and to set up, if necessary, in its sound discretion, a reserve fund for the education and any unusual need that might arise.' Immediately following this enumeration of powers given the Trustee is the following sentence: `However, the Trustee shall at all times pay over monthly, if convenient, if not all the net income, a sum sufficient for the needs, comfort and maintenance of the beneficiary in the style she has been accustomed, or according to the means in hand.' The sentence last quoted when considered in the light of the authority given the Trustee by the sentence immediately preceding it, clearly discloses that the last sentence was intended not to curtail the interest of the beneficiary but rather to enlarge it by requiring the Trustee to so exercise the authority given by the preceding sentence that there be paid over monthly, if convenient, if not all the net income, a sum sufficient for the needs, comfort and maintenance of the beneficiary in the style she has been accustomed. The last sentence in no way cuts down or limits the absoluteness of the requirement that sooner or later the entire net income of the trust during Mary Beeman's life time be applied to her use:"
A restraint on alienation may be defined as a provision in a trust or other instrument which, either by express terms or by implication, purports to prohibit or penalize the use of the power of alienation. The trusts usually involved are spendthrift, discretionary, and support trust.
American Law Institute in its Restatement of the Law of Trusts, Sections 154 and 155, states:

*184 "§ 154. Trusts for Support.
"Except as stated in §§ 156 and 157, if by the terms of a trust it is provided that the trustee shall pay or apply only so much of the income and principal or either as is necessary for the education or support of the beneficiary, the beneficiary cannot transfer his interest and his creditors cannot reach it.
"Comment:
"a. Trust for support distinguished from spendthrift trust. A trust containing such a provision as is stated in this Section is a `trust for support' and is to be distinguished from a spendthrift trust. In a trust for support it is the nature of the beneficiary's interest rather than a provision forbidding alienation which prevents the transfer of the beneficiary's interest. The rule stated in this Section is not dependent upon a prohibition of alienation by the settlor; but the transferee or creditor cannot compel the trustee to pay anything to him, because the beneficiary could not compel payment or compel application in any way except for the restricted purpose set out in terms of the trust.
* * * * * *
"c. Where amount limited to education and support. The rule stated in this Section is applicable where by the terms of the trust the amount to be paid to or applied for the beneficiary is limited to so much of the income or principal as is in fact necessary for his education or support. The application of this Section is not dependent upon the use of any particular form of words in the terms of the trust.
* * * * * *
"d. Where amount not limited to education and support. The rule stated in this Section is not applicable where the amount to be paid or applied by the trustee is a specified sum or is not limited to what is necessary for the education and support of the beneficiary, although by the terms of the trust it appears that the settlor's motive in creating the trust is to provide for the education or support of the beneficiary. If by the terms of the trust the trustee is under a duty to pay to the beneficiary or to apply for his benefit the whole or a fixed part of the income or principal or a fixed amount from the income or principal, although it is expressed that the payments or applications are for the education or support of the beneficiary, and although the amount is no more than is reasonable for his education and support, the beneficiary can transfer his interest and his creditors can reach it, except so far as a valid provision for forfeitures for alienation or restraint on alienation has been imposed as stated in §§ 150, 152 and 153.
"Illustrations:
"3. A transfers Blackacre to B in trust `to pay over to C yearly the net profits or income for the better support and maintenance of said C'. C is entitled to the entire income during his life and can transfer his interest and his creditors can reach it.
"4. A bequeaths $100,000 to B in trust to pay the income to C `to be for her comfort and support.' C is entitled to the entire income during her life and can transfer her interest and her creditors can reach it.
"§ 155. Discretionary Trusts.
(1) Except as stated in § 156, if by the terms of a trust it is provided that the trustee shall pay to or apply for a beneficiary only so much of the income and principal or either as the trustee in his uncontrolled discretion shall see fit to pay or apply, a transferee or creditor of the beneficiary cannot compel the trustee to pay any part of the income or principal.
* * * * * *

*185 "Comment on Subsection (1):
"a. Discretionary trust distinguished from spendthrift trust. A trust containing such a provision as is stated in this Section is a `discretionary trust' and is to be distinguished from a spendthrift trust, and from a trust for support. In a discretionary trust it is the nature of the beneficiary's interest rather than a provision forbidding alienation which prevents the transfer of the beneficiary's interest. The rule stated in this Section is not dependent upon a prohibition of alienation by the settlor; but the transferee or creditor cannot compel the trustee to pay anything to him because the beneficiary could not compel payment to himself or application for his own benefit.
"b. Rule applicable only if payment discretionary. The rule stated in this Section is applicable only where the trustee may in his absolute discretion refuse to make any payment to the beneficiary and to apply any of the trust property for his benefit.
"It is not applicable where the trustee has discretion merely as to the time of payment, and where the beneficiary is ultimately entitled to the whole or to a part of the trust property.
"If by the terms of the trust the trustee must pay to or apply for the beneficiary the whole or any part of the income or principal, the interest of the beneficiary can be reached by his transferee or creditor, unless the trust is a spendthrift trust (see §§ 152, 153) or a trust for the support of the beneficiary (see § 154)."
Bogert in his work on "Trusts and Trustees", Sec. 221, page 460 states the rule as to a discretionary trust thus:
"To meet this situation solicitors employed the discretionary trust. They gave property to a trustee to pay or apply the income for the benefit of a cestui in the uncontrolled discretion of the trustee, seeking thus to make the interest of the cestui so vague as to be practically of no value to creditors of the cestui. In these trusts, where the discretion was so wide that it gave the trustee the privilege of paying or applying something or nothing, it has been held that a creditor of the cestui cannot compel the trust to pay or apply the income in any particular way; that the creditor has no right to any money which the trustee elects to apply for the cestui, although he may reach the fruits of the application in the hands of the cestui, if they are tangible; but that, if the trustee elects to pay money to the cestui, the right to such money is alienable, voluntarily or involuntarily, by the cestui que trust. If the trustee's discretion is narrower and he must pay all or a particular part of the income to the cestui, but may use his judgment about the time of payment, the creditors of the beneficiary can compel the trustee to pay the cestui's share of income to them."
Additional definitions of restraining trusts are given under the title "Trusts" in 54 Am.Jur. §§ 148, 162 and 163, as follows:
"§ 148. In a broad sense, a spendthrift, support, or other similarly protective trust is one created to provide a fund for the maintenance of the beneficiary and at the same time to secure it against his improvidence or incapacity. In a narrower and more technical sense, a spendthrift trust is one that restrains either the voluntary or involuntary alienation by a beneficiary of his interest in the trust, or which, in other words, bars such interest from seizure in satisfaction of his debts. The name `spendthrift trusts' is poorly descriptive, since no spend thriftiness or profligacy of a beneficiary is requisite to, or open to inquiry in determination of, the existence of such a trust.
"While spendthrift trusts are usually regarded as inclusive of all trusts *186 which bar creditors from reaching a beneficiary's interest, they are, in strict legal nomenclature, to be distinguished from other trusts seeking to protect a trust estate against the grantees, transferees, or assignees of a beneficiary, in that a spendthrift trust operates through the mechanism of a restraint pertaining to an existing trust, whereas other protective trusts protect against alienation and liability for debts of a beneficiary of his interest in the trust by providing for a termination or forfeiture of the trust estate, for discretion in a trustee as to the outgo of benefits from a trust estate to beneciaries, or other similar devices."
"§ 162. A trust protective against the grantees or assignees and against the creditors of a beneficiary by virtue of a provision vesting discretion in the trustee to determine the time, amount, or manner of payments to a beneficiary generally is recognized to be valid, * * * The discretion of the trustee may relate to payments for support and maintenance, but the fact that a trustee has a discretion to apply so much of the income as may be necessary for the support of the beneficiary and for other purposes does not remove the trust funds from liability for debts of the beneficiary, if the trustee has no right to exclude the beneficiary from the benefit thereof."
"§ 163. It is generally recognized that a trust may validly protect the interest of a beneficiary against his grantees or assignees and against his creditors by limiting the nature of his interest to that which is necessary for his support and education, although a limitation of benefit of a trust to support and education does not in itself necessarily evidence an intention to exclude alienation by the beneficiary or the liability of his interest for his debts. The protection of a trust for support as against grantees and creditors of the beneficiary results from the nature of the interest of the beneficiary rather than from a direct prohibition of alienation by the terms of the trust. Such a trust is sometimes called a spendthrift trust, although ordinarily it is not so regarded, and is distinguished from a true spendthrift trust.
"Immunization from grantees or creditors of the beneficiary is effected where the trust res is real estate and the beneficiary is authorized to use it and to take so much of the profits as he needs for decent and comfortable support."
In Trask v. Shaffer, 1940, 140 Pa.Super. 505, 14 A.2d 211, 212, in a case where the lower court had found that the trust was a spendthrift trust, the trust instrument contained this provision:
"This fund to be established on the basis that this heir * * * receive the annual income earned by it, and in addition $200 annually from the principal sum of the fund, or more if, in the judgment of the officers of the trust, such increase in the amount paid is needful and advisable. * * *."
The Superior Court reversed the lower court, saying:
"The difficulty with defendant's position is that there is not a word in the will itself to substantiate the court's finding that `the trust fund established * * * by the will * * * is a spendthrift trust.' * * * `While under the law of this commonwealth spendthrift trusts are not regarded with disfavor, yet they are not looked upon with such special favor as warrants the courts in construing a trust to pay the income of a fund to the testator's son for life, without more, to be a spendthrift trust.' And a trust will not be construed of the spendthrift kind, unless the language of the instrument, by which it is created, warrants that construction. While the will or deed often expressly exempts the trust fund from *187 the claims of the creditors of the beneficiary, yet any language which calls for that conclusion is sufficient. In the instant case, however, the will contains no suggestion that the trust fund shall be exempt from the beneficiary's creditors or that he had any creditors, except the testatrix, or that he was improvident.' To which pertinent language we may add that if the trust in question is to be construed as a spendthrift trust, it is difficult to conceive of one that is not. See also In re Shoup's Estate, 31 Pa.Super. 162."
In the case of In re Keeler's Estate, 1939, 334 Pa. 225, 3 A.2d 413, 415, 121 A.L.R. 1301, the Court held the following paragraph did not restrain alienation of the income.
"During the time the said money shall be on interest for the use of my said grand-daughter Lizzie Bartholomew said interest or such portion thereof shall be paid to her or used for her support or education and maintenance so as to make her comfortable in life, said amount so to be used to be determined by said Trustee."
The Court, in its opinion, said:
"Even if we resolve all ambiguities so as to interpret the intent of the testator most favorably to the contentions of appellant, the provisions of the will cannot be held to constitute, in any technical or exact sense, a spendthrift trust. Such a trust exists where there is an express provision forbidding anticipatory alienations and attachments by creditors. Here there are no such restrictions. The present trust is a so-called `trust for support' and, although sometimes loosely referred to as a spendthrift trust, differs from it in essential features which must not be overlooked if confusion as to its legal attributes and qualities is to be avoided. In a trust for support the limitation of the power of alienation arises only by implication from the nature of the beneficiary's interest and the indicated purpose of the trust."
We find no intent on the part of the settlor of the Beeman trust to prohibit alienation of the income of the trust property by the cestui que trust. If the creator of the trust had desired to restrain the disposal of the income of the trust, he had only to write therein, inhibitory words. We find no power in the trustees that will permit them to deprive the beneficiary of all the income under this trust. We are of the opinion from an analysis of the texts and of the adjudicated cases, that the trust instrument involved in this case created neither a spendthrift trust, a support trust, nor a discretionary trust.
We are of the opinion that the lower court should be and it is affirmed.
KANNER, C.J., and SHANNON, J. concur.