**Sarah A. WILSON, now known as S. A. W. Hooker, and George C. Wilson, Executors of the Estate of George C. Wilson Jr., Deceased,**

v.

**UNITED STATES of America, Appellant.**

**No. 16146.**

United States Court of Appeals Third Circuit.

Argued Jan. 5, 1967.

Decided Feb. 7, 1967.

Rehearing Denied Feb. 28, 1967.

Jonathan S. Cohen, Atty., Dept. of Justice, Tax Division, Washington, D. C. (Mitchell Rogovin, Asst. Atty. Gen., Drew J. T. O'Keefe, U. S. Atty., Myrna B. Marshall, Asst. U. S. Atty., Lee A. Jackson, Gilbert E. Andrews, Attys., Dept. of Justice, Washington, D. C., on the brief), for appellant.

Alphonsus R. Romeika, Philadelphia, Pa. (Romeika, Hedner, Fish & Scheckter, Philadelphia, Pa., on the brief), for appellee.

Before McLAUGHLIN, SMITH and FREEDMAN, Circuit Judges.

---

## OPINION OF THE COURT

McLAUGHLIN, Circuit Judge.

In this estate tax case the Commissioner assessed a deficiency in the amount of $22,279.94. The estate executors paid the tax with interest and sued for a refund. The District Court upheld their claim and allowed the refund. The Government appeals from that decision.

The litigation derives from a Pennsylvania spendthrift trust which had been settled upon George C. Wilson, Jr. by his father in 1930. The trust was inter vivos to Wilson, Jr. for life, terminating at the latter's death with the corpus to go to those named by him in his will. Wilson, Jr. was a Pennsylvania resident at the time of his decease on October 26, 1951. Under Pennsylvania law no part of the trust could be seized for the payment of the debts of the deceased. Wilson, Jr. in his will gave, devised and bequeathed the spendthrift trust fund " * * * to my wife for and during the term of her natural life. On her death I give, devise and bequeath the said trust fund to my children above named, share and share alike." The District Court concluded that decedent's power of appointment under the original trust was a general power and that the amount of the trust was to be included in his estate. There was no appeal by the executors from that decision.

This brings us to the one point in dispute, whether the assets of the trust estate are subject to the claims against the general estate within the meaning of Section 812(b) of the 1939 Code. The District Court so held. That ruling had material results in favor of the taxpayers. Excluding the value of the spendthrift trust the Wilson, Jr. estate totaled $246,-304.62. The estate debts and expenses amounted to $274,947.31. The Commissioner of Internal Revenue determined that a tax deficiency of $22,279.48 existed. It is very clear that in so acting, the Commissioner was in full compliance with both the letter and spirit of Section 812(b), which reads as follows:

"(b) [As amended by Sec. 405, Revenue Act of 1942, c. 619, 56 Stat. 798, and Sec. 502, Revenue Act of 1950, c. 994, 64 Stat. 906] Expenses, Losses, Indebtedness, and Taxes.—

\* \* \*

"There shall be disallowed the amount by which the deductions specified in paragraphs (1) [funeral expenses], (2) [administration expenses], (3) [claims against the estate], and (4) ['unpaid mortgages] exceed the value, at the time of the decedent's death, of property subject to claims. For the purposes of this section the term 'property subject to claims' means property includible in the gross estate of the decedent which, or the avails of which, would, under the applicable law, bear the burden of the payment of such deductions in the final adjustment and settlement of the estate; \* \* \*."
(26 U.S.C.1952 ed., Sec. 812).

Under 812(b) there is no deduction allowable to the estate for that part of claims against it which exceeds the value of the estate at the time of decedent's death. No part of the spendthrift trust " \* \* \* would under the applicable law, bear the burden of the payment of such deductions in the final adjustment and settlement of the estate, \* \* \*."

Treasury Regulations 105 (1939 Code) Section 81.29 follows 812(b) precisely. One of its specific examples of the statute's effect is the exact same type of situation as this appeal presents: "Likewise, in such a case where the gross estate is composed of real estate valued at $100,000, and proceeds of life insurance in the amount of $100,000 exempt from general claims, if the only deductions under section 812(b) are claims of creditors totaling $200,000, only $100,000 of such claims is allowable as deductions. \* \*."

The legislative history of the 1942 amendment to Section 812(b) expressly shows its purpose. The House Ways and Means Committee Report, (H.Rep. #2333, 77th Cong. 2d Sess. pp. 163–164

(1942–2 Cum.Bull. 372, 492)) inter alia states:

"Under section 812(b), as amended by this section, amounts otherwise deductible under section 812(b) are disallowed to the extent that they exceed the value at the time of the decedent's death of property subject to claims. 'Property subject to claims' is defined as property includible in the gross estate of the decedent which, or the avails of which, would, under the applicable law, bear the burden of the payment of such deductions in the final adjustment and settlement of the estate."

That we are dealing with a true spendthrift trust has been found by the District Court and is conceded by appellees. Even so it would not be amiss to quote the plenary provisions of the document itself:

"NINTH: Neither the principal nor the income of this trust fund shall be liable for the debts of any beneficiary nor shall the same be subject to seizure by any creditors or any beneficiary under any writ or proceeding at law or in equity, and no beneficiary hereunder shall have any power to sell, assign or transfer, encumber or in any other manner to anticipate or disperse of his or her interest in the trust fund or in the income produced thereby."

■ The validity of the trust under Pennsylvania law was also accepted below by both Court and appellees. There can be no possible doubt of the soundness of that proposition. In Keeler's Estate, 334 Pa. 225, 229, 3 A.2d 413, 415, 121 A.L.R. 1301 (1939) the Supreme Court of Pennsylvania held "Such a trust exists where there is an express provision forbidding anticipatory alienations and attachments by creditors." To same effect C. I. T. Corporation v. Flint, 333 Pa. 350, 5 A.2d 126, 121 A.L.R. 1022 (1939); Re Heyl's Estate, 352 Pa. 407, 43 A.2d 130 (1945); Re Borsch's Estate, 362 Pa. 581, 67 A.2d 119 (1949); Mellon v. Driscoll, 117 F.2d 477 (3 Cir. 1941).

■ Appellees contend that the position taken by the Government was not before the District Court. The latter's opinion itself fails to bear this out. The suggestion, however, does emphasize counsel's comment at oral argument to the effect that the issue had not been presented precisely enough to the Judge who eventually decided it. It happened that the litigation had been before Judge Grim. The latter died prior to it being resolved. The suit was necessarily reassigned. The decisional Court did recognize, despite the objection of appellees, that Wilson, Jr. possessed a general power of appointment over the trust involved. The Court therefore included the trust assets in the estate. That action by the Court however did not of itself in any respect make the trust assets subject to the claims of the estate's creditors under Section 812(b). By the stipulation between the parties that was the very problem to be passed upon by the Judge. Under 812(b) the only property in the gross estate for which the latter could claim deductions was that "subject to claims" i. e. which under the applicable law would "bear the burden of the payment of such deductions in the final adjustment and settlement of the estate." The applicable law was and is that of Pennsylvania under which the spendthrift trust here is not subject to the claims against the estate. Despite this it is argued by appellees that the spendthrift provision properly interpreted really sanctioned the appointment of deceased's creditors by him to the spendthrift trust to which he had been the beneficiary. In arriving at that conclusion it would seem that appellees simply ignore the vital ninth paragraph of the trust. By its terms the language of the ninth paragraph definitively eliminates creditors of the deceased beneficiary from touching the principal or income of that trust under any circumstances whatsoever. Since the assets of the trust were not liable for creditors' claims, those assets were not blended with the general estate funds. Decedent of course had no authority to exercise his appointment in favor of the very group the trust was designed to,

and did, exclude. Morgan v. Commissioner of Internal Revenue, 309 U.S. 78, 626, 60 S.Ct. 424, 84 L.Ed. 585, 1035 (1940) is sound law but it is not the law governing this appeal. As the Pennsylvania Supreme Court held in Terppe's Estate, 224 Pa. 482, 486, 73 A. 922 (1909):

> " * * * we turn to the will of his widow to ascertain from it whether she intended to blend with her own separate estate, for the payment of her debts, that portion of the appointed property which her executor sold under an order of court to the appellant. Her intention in exercising her power of appointment is to be gathered from her will, and as it there appears it must prevail."

To the same effect Stannert's Estate, 339 Pa. 439, 15 A.2d 360 (1940). A strikingly similar Tax Court case should be noted, Estate of Lande, 21 T.C. Reports 977 (1954). There decedent was the beneficiary of a spendthrift trust with the power by will to dispose of the principal of that fund remaining at the time of his death after payment of certain specified items. Decedent did exercise his power of appointment. His separate estate, exclusive of the trust property, was not sufficient to pay all of his funeral and administration expenses or any part of the charitable bequests made by him in his will. Petitioner asserted that those items were payable out of the trust and that the claimed deductions for them should be allowed. The Court found that under New York probate law the trust assets "subject to a power as defined in the local statute, do not constitute assets of the decedent's estate for local probate purposes." The Tax Court held pp. 986–987:

> "For the reasons stated, it is our opinion that the trust corpus subject to decedent's general testamentary power of appointment did not constitute property includible in the decedent's gross estate which, or the avails of which, under the applicable local law, would bear the burden of the payment of such claims in the final adjustment and settlement of the decedent's estate within the meaning of section 812(b), Internal Revenue Code. Accordingly the respondent did not err in limiting the deduction claimed for funeral and administration expenses and debts. Estate of Herbert Jermain Slocum, 21 T.C. 465."

 We find no justification for the inclusion of the spendthrift trust of which Wilson, Jr. was the beneficiary, in the total allowable as a deduction for claims and expenses and that the maximum amount so allowable to the deceased's estate is $246,304.62 as determined by the Commissioner.

The judgment of the District Court will be reversed and the case remanded to that Court for entry of judgment in favor of the United States of America.