**In re N. Luis RODRIGUEZ and Loretta G. Rodriguez, Debtors.**

**Bankruptcy No. ED 86–139M.**

United States Bankruptcy Court, W.D. Arkansas, El Dorado Division.

June 19, 1987.

William Randal Wright, Trustee, Hope, Ark.

Henry C. Kinslow, El Dorado, Ark., for debtors.

### ORDER

JAMES G. MIXON, Bankruptcy Judge.

On October 23, 1986, N. Luis Rodriguez and Loretta G. Rodriguez filed a voluntary petition for relief under the provisions of chapter 7 of the United States Bankruptcy Code. The Honorable William Randal Wright was appointed trustee.

On the day the petition was filed, Mr. Rodriguez (debtor) was a beneficiary of an employer-sponsored savings plan known as Harsco Corporation Savings Plan (Plan). The Plan satisfies the requirements of the

Employee Retirement Income Security Act of 1974 (ERISA) and is a qualified plan for tax purposes under section 401(a) of the Internal Revenue Code. Section 15.04 of the Plan provides that the Plan shall be governed by, construed, administered and regulated in all respects under ERISA and the laws of Pennsylvania. The Plan provides that the employer will match one-half of the employee's contributions to the Plan, up to a maximum of two percent of gross earnings, provided the employer has sufficient earnings in the previous year. The Plan also provides that an employee may only withdraw "vested" funds contributed by the employer upon retirement, death, or termination of employment. Section 1.24 of the Plan defines "termination of employment," and states that when a participant "quits," he has terminated employment. The parties stipulated that the Plan allowed the debtor to voluntarily withdraw up to 100% of his contributions to the Plan, but only at stated intervals. The record does not reflect the amount of contributions made to the Plan by the debtor, nor the employer's matching amounts.

The debtor claimed the funds in the Plan as exempt property, and the trustee filed an objection. The matter was submitted on briefs and stipulated facts. The proceeding before the Court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B), and this Court has jurisdiction to enter a final judgment.

The filing of a chapter 7 petition creates an estate which consists of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1); 4 *Collier on Bankruptcy* ¶ 541.01 (15th ed. 1987). The scope of the section was intended to be broadly construed. *United States v. Whiting*

*Pools, Inc.*, 462 U.S. 198, 204–05, 103 S.Ct. 2309, 2313–14, 76 L.Ed.2d 515 (1983). 11 U.S.C. § 541(c)(2) provides an exception to the general rule that all interests which the debtor has in property are included in the estate, stating that "[a] restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title." The debtor argues that the antialienation clause in the Plan[1] is an enforceable restriction on the transfer of his Plan interest under applicable nonbankruptcy law, and that the Plan assets are excluded from the estate pursuant to the exception provided in Section 541(c)(2).

A majority of the courts that have addressed the issue have held that ERISA plan trusts containing antialienation provisions are excluded from the estate under section 541(c)(2) only if they are enforceable under state law as spendthrift trusts. *See In re Graham*, 726 F.2d 1268 (8th Cir.1984); *In re Lichstrahl*, 750 F.2d 1488 (11th Cir.1985); *In re Goff*, 706 F.2d 574 (5th Cir.1983); *In re Daniel*, 771 F.2d 1352 (9th Cir.1985), *cert. denied*, 475 U.S. 1016, 106 S.Ct. 1199, 89 L.Ed.2d 313 (1986); *In re Flygstad*, 56 B.R. 884 (Bkrtcy.N.D.Iowa 1986); *In re Werner*, 31 B.R. 418 (Bkrtcy. D.Minn.1983). *But see In re Phillips*, 34 B.R. 543 (Bkrtcy.S.D.Ohio 1983); *In re Holt*, 32 B.R. 767 (Bkrtcy.E.D.Tenn.1983); *In re Pruitt*, 30 B.R. 330 (Bkrtcy.D.Colo. 1983).

This Court is bound by the Eighth Circuit Court of Appeal's decision in *In re Graham*, in which the court held that the term "applicable nonbankruptcy law," as used in section 541(c)(2), does not include ERISA. *In re Graham*, 726 F.2d at 1271. Although the debtor in *Graham* had con-

---

**1.** All ERISA plans must provide that benefits provided under the plan may not be assigned or alienated. 29 U.S.C. § 1056(d) and 26 U.S.C. § 401(a)(13). The parties stipulated that the restrictions on alienation contained in the Plan are as follows:

15.07 No benefit payable at any time under the Plan, and no interest or expectancy therein, shall be transferable or assignable by any Participant or retired Participant or Beneficiary thereof or be subject to alienation, sale,

transfer, assignment, pledge, attachment, encumbrance, garnishment, anticipation, execution or levy of any kind, voluntary or involuntary. Any attempt to alienate, sell, transfer, assign, pledge or otherwise encumber any such benefit, whether presently or thereafter payable, shall be void. Notwithstanding the foregoing, payment shall be made pursuant to a Qualified Domestic Relations order, as defined in Section 414(p) of the Code.

siderable more control over the administration of his retirement plan than did the debtor in the present case, the rule of law set forth in *Graham* is certainly relevant. After examining the legislative history of section 541(c)(2), that court held that Congress intended the provision to exclude from the estate only spendthrift trusts as determined under state law, and not ERISA pension plans. The court noted that pension benefits are "specifically treated under the Code's *exemption* provision, clearly indicating that they were intended and assumed to be part of the estate." *In re Graham*, 726 F.2d at 1272 (emphasis original). However, the court did not address the possibility that a trust utilized in an ERISA pension plan could also be characterized as a valid spendthrift trust under a particular state's property law.[2]

Although the debtor's domicile was in Arkansas on the petition date, the Plan's sponsor, the Harsco Corporation, is a Pennsylvania corporation, and the Plan was executed pursuant to that state's laws. The Plan provides that Pennsylvania law shall govern all aspects of the Plan and the parties so stipulated. Therefore, the Court must determine whether or not the Plan qualifies as a valid spendthrift trust under Pennsylvania state law. *See Allen v. Tate*, 6 F.2d 139 (8th Cir.1925) (Missouri court required to use Pennsylvania law in construing trust created and maintained in the latter state); *In re Crenshaw*, 51 B.R. 554 (N.D.Ala.1985) (Alabama court construed ERISA plan using Illinois law); V A. Scott, *Scott on Trusts* § 626 (3rd ed. 1967).

■ Spendthrift trusts have long been recognized in Pennsylvania. *See, e.g., In re Grote's Estate*, 390 Pa. 261, 135 A.2d 383 (1957); *In re Heyl's Estate*, 352 Pa.

407, 43 A.2d 130 (1945); *In re Morgan's Estate*, 223 Pa. 228, 72 A. 498 (1909). Although Pennsylvania courts do not require any specific language in spendthrift trusts, the general characteristics of valid spendthrift trusts are the same in Pennsylvania as those generally recognized by other courts; the trust must prohibit the beneficiary from alienating his interest and it must restrict creditors from attaching the trust corpus until the beneficiary has actually received the property. *See In re Heyl's Estate*, 352 Pa. at 407, 43 A.2d at 130; *Riverside Trust Co. v. Twitchell*, 342 Pa. 558, 20 A.2d 768 (1941); *In re Keeler's Estate*, 334 Pa. 225, 3 A.2d 413 (1939); *Wilson v. U.S.*, 372 F.2d 232 (3rd Cir.1967). In each case cited above, the court stated that a spendthrift trust exists where there is an express provision forbidding anticipatory alienations and attachment by creditors. The rationale for requiring that the trust preclude the beneficiary from alienating his interest is not difficult to understand. Public policy would not be served by allowing a beneficiary the privilege of use of property while preventing the beneficiary's creditors the right to seize those assets. In the present case, the debtor had the power to access Plan funds. The Plan allowed the debtor to withdraw all of the contributions he had made, with virtually no restrictions, and allowed him an absolute right, upon termination of employment, including his resignation, to receive the vested portion of contributions made on his behalf by the employer. Because the debtor had the power to receive the trust corpus at his discretion, the Plan funds are assignable and the Plan cannot be deemed a spendthrift trust under Pennsylvania law. *See In re Morgan's Estate*, 223 Pa. at 228, 72 A. at 498; *Wilson v. U.S.*, 372 F.2d 232 (3rd Cir.1967).[3]

---

**2.** One bankruptcy court has construed the analysis in *Graham* to mean that all pension plan assets must be included in the estate, without a determination of whether a valid spendthrift trust exists under state law. *In re Flygstad*, 56 B.R. 884 (Bkrtcy.N.D.Iowa 1986). This Court is unwilling to accept such a narrow interpretation in light of the specific language in *Graham* stating that spendthrift trusts are excluded from the estate.

**3.** Other bankruptcy courts have held that the power to obtain trust funds by terminating employment prevents the funds from being excluded as property of the estate under 11 U.S.C. § 541(c)(2). *See In re Sundeen*, 62 B.R. 619 (Bkrtcy.C.D.Ill.1986); *In re Werner*, 31 B.R. 418 (Bkrtcy.D.Minn.1983); *But see In re Forbes*, 65 B.R. 58 (Bkrtcy.S.D.Fla.1986); *In re Lawson*, 67 B.R. 94 (Bkrtcy.M.D.Fla.1986).

The debtor's alternative argument that his Plan funds are exempt property pursuant to Ark.Stat.Ann. § 36–211(b)(16) (Supp. 1985) is without merit. That section provides that "all other benefits exempt by law but not specifically enumerated herein" are exempt from execution under federal bankruptcy proceedings. However, the debtor does not point to any statute or constitutional provision which forms the basis for an exemption.

The trustee's objection to the debtor's claim of exemption of his Plan fund is sustained.

IT IS SO ORDERED.