J. A19041/16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| TRUST OF JOHN MIDDLETON, INC. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF:  JOHN S. MIDDLETON | : | No. 3389 EDA 2015 |

Appeal from the Order Entered October 6, 2015,
in the Court of Common Pleas of Montgomery County
Orphans' Court Division at No. 2014-X3827

BEFORE:  FORD ELLIOTT, P.J.E., OTT AND DUBOW, JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED MARCH 16, 2017**

John S. Middleton, Trustee of the Trust of John Middleton, Inc., dated May 19, 1982 ("1982 Trust"), appeals the order of the Court of Common Pleas of Montgomery County that granted the motion for summary judgment of Anna K. Nupson ("Nupson") and granted the request for a declaration that Nupson's 1998 assignment of her interest in the 1982 Trust has been revoked and is a nullity and that Nupson is a beneficiary entitled to one-third of the remainder of the 1982 Trust outright.

Herbert H. Middleton, Jr., created the 1982 Trust in the name of John Middleton, Inc., as settlor.  The trial court summarized the facts concerning the 1982 Trust as well as the procedural history relating to this litigation:

> During her lifetime, Frances S. Middleton was the sole income beneficiary of the 1982 Trust. Following her death on September 24, 2013, under the provisions of the trust instrument, the remaining

assets became distributable outright in equal shares to the three children of Frances S. Middleton and Herbert H. Middleton, Jr.: [Nupson], [appellant]), and Lucia Hughes ("Ms. Hughes"). [Appellant] and his mother, Frances, initially served as co-trustees of the 1982 Trust. [Appellant] now serves as the sole trustee of the trust.

The 1982 Trust contains a spendthrift provision that prohibits assignment of a beneficiary's interest in the Trust. On June 15, 1998, [Nupson] signed a document with a caption of "Agreement of Trust of Anna K. Middleton dated September 12, 1994" titled "Assignment" (the "1998 Assignment") which purported to assign irrevocably all principal distributions from the 1982 Trust otherwise payable to [Nupson] to a trust she created on September 12, 1994 (the "1994 Anna Trust"), of which she is the settlor and lifetime beneficiary.[Footnote 1] The 1998 Assignment provides:

> I hereby irrevocably assign all principal distributions that would otherwise be payable to me from the 1972 Trust, the 1982 Trust and the 1990 Trust to the 1994 Trust, and I hereby renounce my right to serve as a Co-Trustee of the 1972 Trust.

It is undisputed that [appellant], trustee of the 1982 Trust, has never made any distribution of principal of the 1982 Trust to any of the remainder beneficiaries, and specifically has not made any distribution pursuant to the 1998 Assignment.

By letters dated September 25, 2014 and October 3, 2014 to [appellant], trustee of the 1982 Trust and one of the trustees of the 1994 Anna Trust, [Nupson] explicitly revoked and repudiated the 1998 Assignment and requested immediate distribution of principal from the 1982 Trust. In her September 25, 2014 letter, [Nupson] wrote:

By this letter, I immediately revoke and repudiate any and all assignments of principal or income that I may previously have authorized you to make as Trustee of any trust that benefits me, or that I may have authorized your successor trustees to make. This revocation and repudiation of all such assignments specifically includes but is not limited to the attached "Agreement of Trust of Anna K. Middleton dated September 12, 1994," but with a signature dated June 15, 1998.

I also repeat my request of last month that you distribute principal to me under three spendthrift trusts which you administer as Trustee, and of which I am a beneficiary. To be clear, I have requested immediate distributions of principal from the 1972 Herbert H. Middleton, Sr. Trust, the 1982 John Middleton, Inc. Trust, and a distribution from the 1990 Herbert H. Middleton, Jr. Trust on September 16, 2018, pursuant to the provisions of those three trusts.

[Nupson] repeated her request in an October 3, 2014 letter:

By my letter of September 25, 2014, I immediately revoked and repudiated any and all assignments of principal or income that I may previously have made or authorized you to make. I informed you that this revocation and repudiation of all such assignments specifically includes but is not limited to the so-called "Agreement of Trust of Anna K. Middleton dated September 12, 1994," but which has a signature dated June 15, 1998. I am reiterating that revocation and repudiation in this letter, and wish to clarify that by my letter of

September 25, 2014 and again by this letter, I revoke your authority to distribute funds by any other manner than that expressly provided in the three spendthrift trusts discussed below.

. . . .

I also write to repeat my request of last month that you distribute principal to me from the three spendthrift trusts which you administer as Trustee, and of which I am a beneficiary. To be clear, I have requested immediate distributions of principal from the 1972 Herbert H. Middleton, Sr. Trust and the 1982 John Middleton, Inc. Trust, and a distribution from the 1990 Herbert H. Middleton, Jr. Trust on September 16, 2018, pursuant to the respective provisions of those trusts.

[Nupson] filed a Petition for Declaratory Relief with respect to which she has now filed a motion for summary judgment presenting the following issue: whether [Nupson's] 1998 assignment of her interest in the 1982 Trust, later revoked in writing, is valid and enforceable where the 1982 Trust contained a spendthrift provision prohibiting assignment of a beneficiary's interest, and where the trust assets have not yet been distributed. Responses to the motion were filed by [appellant] in his capacity as one of the trustees of the Trusts under Agreement of Trust of Anna M. Bauer, Settlor, dated September 12, 1994, and by Lucia Hughes and her children ("the Hughes family"). Ms. Hughes is one of three remainder beneficiaries of the 1982 Trust and her children are contingent remainder beneficiaries of the 1994 Anna Trust. . . . This Court has considered the arguments advanced in memoranda of law and at oral argument.

- 4 -

[Footnote 1] The 1998 Assignment also purports to assign to the 1994 Anna Trust all principal distributions otherwise payable to Ms. Nupson from an Agreement of Trust dated April 21, 1972, created by Herbert H. Middleton, Sr. and Anna E. Middleton (the "1972 Trust") and an Agreement of Trust dated April 18, 1990, created by Herbert H. Middleton, Jr. and Frances S. Middleton (the "1990 Trust"). This Order and Opinion applies only to the 1982 Trust as no motions have been filed with respect to the other trusts to which the 1998 Assignment purportedly applies.

Trial court opinion, 10/2/15 at 1-4.

By order dated October 2, 2015, the trial court granted the motion for summary judgment which is on appeal before this court. The trial court also stated in the order that because there were outstanding objections to the Trust account, the trial court was unable to issue an adjudication of the account.

On appeal, appellant raises the following issues for this court's review:

1. Did the [trial] [c]ourt err as a matter of law in granting summary judgment on the affirmative defenses of laches, equitable estoppel, unclean hands and unjust enrichment, despite the fact that no discovery had taken place regarding [Nupson's] Assignment, her ratification and her unexplained 16-year delay in revoking it?

2. Did the [trial] [c]ourt err as a matter of law in its interpretation of 20 Pa. C.S.A. § 7746(a), which changed the common law rule and limited spendthrift trust protection to only a "reasonable time" after the termination of a trust, and which is necessarily dependent upon facts and circumstances and therefore inappropriate for summary judgment?

Appellant's brief at 5.

This court reviews a grant of summary judgment under the following well-settled standards:

> Pennsylvania law provides that summary judgment may be granted only in those cases in which the record clearly shows that no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law. The moving party has the burden of proving that no genuine issues of material fact exist. In determining whether to grant summary judgment, the trial court must view the record in the light most favorable to the non-moving party and must resolve all doubts as to the existence of a genuine issue of material fact against the moving party. Thus, summary judgment is proper only when the uncontraverted [sic] allegations in the pleadings, depositions, answers to interrogatories, admissions of record, and submitted affidavits demonstrate that no genuine issue of material fact exists, and that the moving party is entitled to judgment as a matter of law. In sum, only when the facts are so clear that reasonable minds cannot differ, may a trial court properly enter summary judgment.
>
> [O]n appeal from a grant of summary judgment, we must examine the record in a light most favorable to the non-moving party. With regard to questions of law, an appellate court's scope of review is plenary. The Superior Court will reverse a grant of summary judgment only if the trial court has committed an error of law or abused its

> discretion. Judicial discretion requires action in conformity with law based on the facts and circumstances before the trial court after hearing and consideration.
>
> ***Gutteridge [v. A.P. Green Services, Inc.***, 804 A.2d 650, 651 (Pa.Super. 2002)].

***Wright v. Allied Signal, Inc.***, 963 A.2d 511, 514 (Pa.Super. 2008)

(citation omitted).

> Pennsylvania Rule of Civil Procedure 1035.2 provides:
>
> After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law
>
> (1)  whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or
>
> (2)  if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury.

Pa.R.C.P. 1035.2.

Appellant argues that Nupson's assignment of her interest in the 1982 Trust was part of a Family Settlement Agreement and a Master Settlement Agreement created and agreed to following the death of

Herbert H. Middleton, Jr. These agreements, appellant asserts, demonstrated that Mrs. Middleton's decision to include Nupson equally in her estate plan upon her death was dependent upon Nupson warranting that the Assignment was irrevocable, that the assets from the 1982 Trust would be added to the principal of the 1994 Trust, and that the assignment would further the family's objective that family assets would only pass to family members. Under the terms of the 1994 Trust, the assets in the 1994 Trust could, upon the death of Nupson, pass only to Nupson's issue or to her nieces and nephews if she had no issue. When Nupson retained new counsel in 2011 and reviewed the various trust documents including the 1994 Trust and the assignment, Nupson did not revoke the assignment. According to appellant, Nupson did not revoke the assignment at that time because then Mrs. Middleton would have disinherited her. Instead, appellant adds, Nupson intentionally and deceitfully waited until after Mrs. Middleton's estate plan was made final by her death. Appellant further asserts that discovery is needed surrounding the family agreements, Nupson's investigation, the terms of the revocation of the assignment, and Nupson's opposition to the filing of an account.

In granting summary judgment, the trial court determined that there were four undisputed facts relevant to the 1998 assignment: 1) the 1982 Trust contained a spendthrift provision that specifically prohibited assignments; 2) Nupson signed a document in 1998 in which she intended

to assign her interest in the 1982 Trust; 3) Nupson signed letters dated September 14, 2014 and October 3, 2014 that revoked the assignment; and 4) appellant never acted on the assignment and did not distribute the trust assets to the remainder beneficiaries.

Section 7742 of the Uniform Trust Act provides:

> **(a)** **Validity.--**A spendthrift provision is valid only if it restrains both voluntary and involuntary transfer of a beneficiary's interest.
>
> **(b)** **Creation.--**A trust instrument providing that the interest of a beneficiary is held subject to a "spendthrift trust," or words of similar import, is sufficient to restrain both voluntary and involuntary transfer of the beneficiary's interest.
>
> **(c)** **Effect.--**A beneficiary may not transfer an interest in a trust in violation of a valid spendthrift provision. Except as otherwise provided in this subchapter, a creditor or assignee of the beneficiary of a spendthrift trust may not reach the interest or a distribution by the trustee before its receipt by the beneficiary.

20 Pa.C.S.A. § 7742.

Paragraph FOURTH of the 1982 Trust contains language that restricts assignments:

> All interests hereunder, whether principal or income, while undistributed and in the possession of Trustees, and even though vested or distributable, shall not be subject to attachment, execution, or sequestration for any debt, contract, obligation or liability of any beneficiary, and furthermore, shall not be subject to pledge, assignment, conveyance or anticipation.

Agreement of Trust between John Middleton, Inc., and Frances S. Middleton

and John S. Middleton, 5/19/82 at 6, ¶ 4.

Appellant does not dispute that this provision is a spendthrift

provision.

The trial court determined:

> A valid spendthrift provision makes it impossible for a beneficiary to make a legally binding, irrevocable transfer because "an irrevocable assignment would be equivalent to a transfer of the beneficiary's interest." *In re Keeler's Estate*, 334 Pa. 225, 232, 3 A.2d 413, 417 (Pa. 1939) (quoting Griswold on Spendthrift Trusts, section 306). Although a trustee may choose to honor the beneficiary's purported assignment, because the beneficiary has not made a binding transfer, the beneficiary can withdraw his or her direction as to future distributions. 20 Pa.C.S. § 7742(c) (Uniform Law Comment, citing Restatement (Third) of Trusts Section 58 cmt. d (Tentative Draft No. 2, approved 1999); Restatement (Second) of Trusts Section 152 cmt. i (1959).
>
> . . . .
>
> . . . . While a trustee may honor an assignment, the assignment is invalid and can be revoked at any time.
>
> In *In re Keeler's Estate*, the Supreme Court of Pennsylvania decided as follows:
>
>> Even in a spendthrift trust the beneficiary has full ownership and control of the installments of income after they respectively accrue and therefore after such accrual the beneficiary may give directions to the trustee to pay such installments to her nominee or assignee.

- 10 -

> When a beneficiary makes an assignment of future income and directs the trustee to pay such income to the assignee, such an assignment, in the case of spendthrift trusts, is invalid in the sense that it can be revoked at any time by the beneficiary, but, unless and until so repudiated, it constitutes a valid authority to the trustee to make payments of successively accruing installments of income to the assignee. The direction of the trustee to pay the assignee is enforceable only as to each installment after it accrues and then only if the direction has not previously been rescinded.

> *In re Keeler's Estate*, *supra*, 334 Pa. 225, 231, 3 A.2d 413, 416 (Pa. 1939).

> Applying the Supreme Court's reasoning in *In re Keeler's Estate* to the present case, the 1998 Assignment is not irrevocable. Indeed it could be revoked at any time. Accordingly, Ms. Nupson's revocation of the Assignment rendered the Assignment a nullity.

Trial court opinion, 10/2/15 at 6-7.

We agree with the trial court that Nupson had the authority to revoke the assignment under both the Uniform Trust Act and the 1982 Trust. We must look at the validity of the revocation of the assignment in the context of the 1982 Trust. The settlor of the 1982 Trust intended for the spendthrift provision to be in place. Appellant attempts to raise the equitable defenses in connection with the intent of his mother, Frances Middleton, in executing her own estate plan which encompassed other trust agreements and family settlement agreements. The law on assignments by a beneficiary of a

spendthrift trust is clear that the only concern is to give effect to the will of the donor. *In re Bosler's Estate*, 107 A.2d 443, 445 (Pa. 1954). Although Nupson may have violated a family settlement agreement, she did not violate any law or statute when she revoked the assignment. Appellant has failed to establish that there was a dispute as to a material fact so as to preclude the grant of a motion for summary judgment. The defenses asserted by appellant do not apply under the facts of this case to vitiate the intent of the settlor in the 1982 Trust.

Appellant next contends that the trial court erred as a matter of law when it failed to apply Section 7746 of the Uniform Trust Act as written, and instead determined what it believed the statute was designed to address.

Section 7746 provides:

> **(a)** **Distribution not made within reasonable time.--**Whether or not the interest of the beneficiary in the trust is subject to a spendthrift provision, a creditor or assignee of a beneficiary may reach a mandatory distribution of income or principal, including a distribution upon termination of the trust, if the trustee has not made the distribution to the beneficiary within a reasonable time after the mandated distribution date.
>
> **(b)** **Definition.--**As used in this section, the term "mandatory distribution" means a distribution of income or principal that the trustee is required by the trust instrument to make to a beneficiary, including a distribution upon the termination of the trust. The term excludes a distribution that is subject to the exercise of the trustee's discretion regardless of whether the trust instrument includes a support or

> other standard to guide the trustee in making distribution decisions or provides that the trustee "may" or "shall" make discretionary distributions, including distributions pursuant to a support or other standard.

20 Pa.C.S.A. § 7746(a), (b).

Appellant argues that this provision means that spendthrift protection remains in effect only for a reasonable time. Appellant asserts that Nupson never explained why she waited one year after the death of her mother which essentially terminated the trust before she revoked her assignment and why she did not want appellant to file his accounting for the 1982 Trust.

The trial court determined that none of these facts was material to the questions presented regarding the validity of the spendthrift clause of the 1982 Trust, and Nupson's power to revoke the assignment.

This court agrees with the trial court. A careful reading of Section 7746 yields no applicability to the revocation of an assignment but deals with a trustee's distribution of trust proceeds within a reasonable time and the ability of a creditor or assignee to reach a mandatory distribution which the trustee has not made after a reasonable time.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/16/2017